UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jason Meinelt, | § | CIVIL ACTION NO. 10-311 |
|     Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| P.F. Chang's China Bistro, Inc., | § | |
|     Defendant | § | A JURY IS DEMANDED |

<u>Plaintiff's Response to Defendant's Motion to Exclude Expert</u>

TABLE OF CONTENTS

Summary of the Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Nature and Stage of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Dr. Lehrer's Qualifications and Experience. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Data Upon Which Dr. Lehrer Relied and His Analysis.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Back Pay Through December 31, 2010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Front Pay – January 1, 2011 Through Anticipated Recovery of Earnings Capacity.. . . . . . . . . . . 7

The Defendant's Legal Arguments – and Lack of Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Factual Inaccuracies in Defendant's Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Defendant's Misguided Challenges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       Future Management Prospects.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
       The Six Factors Considered in Assessing Front Pay Awards. . . . . . . . . . . . . . . . . . . . 11
       Front Pay Awards Do Not Lend Themselves to a Per Se Rule. . . . . . . . . . . . . . . . . . . 13
       Meinelt's Work Life Expectancy.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

CASES

*Burns v. Texas City Refining, Inc.*, 890 F.2d 747 (5th Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Culver vs. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . . . 4, 5

*Downey v. Strain*, 510 F.3d 544 (5th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Edmonds v. Ill. Cent. Gulf R.R. Co.*, 910 F.2d 1284 (5th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . 9

*Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Moore v. Ashland Chem., Inc.,* 151 F.3d 269 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Mota v. University of Texas Health Science System,* 261 F.3d 512 (5th Cir. 2001). . . . . . . . . . . 13

*Olitsky v. Spencer Gifts*, 964 F.2d 1471 (5th Cir.1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Padilla v. Metro-North Commuter Railroad,* 92 F.3d 117 (2nd Cir. 1996). . . . . . . . . . . . . . . . . 13

*Patterson v. PHP Healthcare,* 90 F.3d 927 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Peyton v. Dimario,* 287 F.3d 1121 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 9

*Stafford v. Electronic Data Sys. Corp.*, 749 F. Supp. 781 (E.D. Mich. 1990).. . . . . . . . . . . . . . . 13

*Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

RULES

Rule 702, Federal Rules of Evidence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jason Meinelt, | § | CIVIL ACTION NO. 10-311 |
|     Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| P.F. Chang's China Bistro, Inc., | § | |
|     Defendant | § | A JURY IS DEMANDED |

**Plaintiff's Response to Defendant's Motion to Exclude Expert**

The plaintiff, Jason Meinelt, respectfully asks this Court to deny the defendant's motion to exclude his expert witness on economic damages, Dr. Kenneth Lehrer. Dr. Lehrer is well qualified to present such testimony. He has over 30 years experience in preparing economic damage assessments and has testified in court as an expert over 250 times. He has never been excluded from testifying by any Court in which has been named as an expert.

**Summary of the Argument**

The question immediately before the Court is whether Dr. Lehrer's testimony as to the economic consequences of Jason Meinelt's unlawful termination is admissible. The defendant provides no authority for exclusion. Finding no judicial authority for the concept that the testimony is *per se* inadmissible, the defendant turns to case law in which there were post-judgment challenges to the sufficiency of front pay awards. In addition to asking the Court to reach its determination based on apples and oranges, the defendant misstates the evidence upon which Dr. Lehrer relied and the opinions he expressed.

**Nature and Stage of Proceedings**

Mr. Meinelt filed this ADA and FMLA case to challenge the fact that, after five successful years working at P.F. Chang's, he was dismissed only a few days after advising his employer that he had a brain tumor and needed surgery.

No one disputes that this termination had a financial impact on Mr. Meinelt. Indeed, the defendant named a damages expert of its own to that effect. The issue raised by the defendant is whether the testimony of Mr. Meinelt's expert witness on the issue of front pay is reliable. In analyzing this challenge, it is important to review, in the first instance, Dr. Lehrer's training and experience. Following that, the defendant's specific challenges will be addressed.

**Dr. Lehrer's Qualifications and Experience**

Dr. Kenneth E. Lehrer is an experienced Consulting Economist. He has a wide breath of practical experience and solid academic qualifications. He holds four degrees from New York University: a bachelor's in finance, a master's in business administration, a master's in economics, and a doctorate in urban economics. He also served for almost twenty years as an adjunct professor of finance at the University of Houston, Graduate School of Business Administration, and is presently an adjunct professor of finance and economics at the University of Phoenix.

Dr. Lehrer began his career as a corporate lending officer for Bankers Trust Company in New York City in 1970 and then worked as a real estate manager for billionaire Greek shipper, Costas Lemos. There, he assisted on commercial projects in New York, Houston, Denver, Guam, and Europe. Dr. Lehrer moved to Houston in 1977.

For more than thirty years, he has served as a consulting economist and the managing director of his own boutique consulting business.  He has fulfilled a wide range of economic and financial consulting engagements throughout the United States and overseas.  Since starting his business in 1982, Dr. Lehrer has fulfilled assignments in many areas of  economics, finance, economic damage analysis (including business and technology losses), banking, business, ESOP and non public business valuations, securities, healthcare, fairness and advisory opinions, intellectual property valuations, real estate and corporate finance.  He also prepares institutional economic/finance reports, feasibility analyses, and corporate business plans and he provides litigation support in the areas of economics, real estate, banking, corporate and IP valuations, class actions, and finance.  Over the course of his career, he has prepared over 1,000 economic valuations reports, given depositions in over 350 cases, and testified in court more than 250 times.

During the savings and loan crisis of the United States in the late 1980s, Dr. Lehrer served as Chairman of the Board of Directors for the Federal Home Loan Bank of Dallas as agent for the Federal Savings and Loan Insurance Corporation of Acadia Savings and Loan Association, French Market Homestead Savings, Twin City Savings, and First Savings of Louisiana.  Presently, Dr. Lehrer serves as the senior economist and a director of Aztec Oil and Gas, a publicly traded corporation.

Dr. Lehrer is a Texas State Certified General Real Estate Appraiser and is recognized by the National Association of Real Estate Appraisers.  He is also a member of the National Association of Business Economists, American Academy of Economic and Financial Experts, American Law and Economics Association, Houston Business Economists, National Forensic

Center, National Association of Forensic Economists, American Economic Association, North American Economics and Finance Association, Southern Economic Association, Western Economic Association and the Finance Club and Money Marketeers, both affiliated with New York University.

Dr. Lehrer is also registered with the Securities and Exchange Commission as an Investment Advisor under the Investment Advisors Act of 1940 and held Full Registration/General Securities (Series 7) and Texas Securities (Series 63) Licenses.

## Standard of Review

To determine whether expert testimony is properly admitted under Rule 702 of the Federal Rules of Evidence, courts use the framework set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1993).[1] *Daubert* requires that the district court ensure that any expert testimony "is not only relevant, but reliable." *Id.* at 589; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141-42 (1999). When the methodology is sound, and the evidence relied upon is sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility. *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 351 (5th Cir. 2007); *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*).

With over 30 years of experience and more than 1,000 economic analyses to his credit, Dr. Lehrer is uniquely qualified to testify.  As the U.S. Supreme Court observed in *Kuhmo Tire,*

---

[1] An expert witness with "scientific, technical, or otherwise specialized knowledge," may testify and form an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

"no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." 526 U.S. at 156. The objective of the gatekeeping requirement established in *Daubert* is to ensure that the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. Dr. Lehrer honors these requirements with his testimony in this case.

### Data Upon Which Dr. Lehrer Relied and His Analysis

An award of front pay relies on the testimony of an expert witness – one who provides a professionally methodical analysis of the relevant and reliable data. The need for this testimony is outlined in such authority as *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 547-49 (1983) and *Culver vs. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983) (*en banc*).

Dr. Lehrer is well-qualified to provide testimony with regard to Mr. Meinelt's economic damages. His knowledge and experience are vast. He has conducted over 1,000 economic damage analyses, taught economics for over two decades, read numerous authoritative publications in the field, and consulted with many individuals who have experienced job loss. He is well-qualified to help the jury understand the evidence in this case. After all, as previously noted, no one doubts that there were economic consequences for Mr. Meinelt when he was dismissed from employment. The only question is the extent of those consequences.

### Back Pay Through December 31, 2010

The first economic evaluation undertaken by Dr. Lehrer was to assess Mr. Meinelt's losses through December 31, 2010. Here, the relevant facts are that Mr. Meinelt has a high school education, having graduated from high school in 1993, and he entered full-time employment in the overall stream of business and commerce in 1996 – in the restaurant business.

Mr. Meinelt had been working for P.F. Chang's China Bistro for almost four years when he was terminated in June 2009. Jobs in the restaurant business, as Dr. Lehrer explains, compose a segment of the workforce commonly referred to as the "tan collar" sector.[2] Mr. Meinelt had a solid work performance history at P.F. Chang's at the time of his termination and, only a few months before, was specifically recognized for catching a contractor stealing property – an accomplishment that allowed P.F. Chang's to extract itself from an expensive and problematic contract. Other facts pertinent to this aspect of Dr. Lehrer's analysis were that Mr. Meinelt advised his employer only days before his termination that he had a brain tumor and would require time off for surgery and recuperation, and that Mr. Meinelt's termination was without notice, with his employer labeling him as a thief and ineligible for rehire.

    Other facts on which Dr. Lehrer relied are that, following Mr. Meinelt's surgery, his doctor released him to resume employment in mid-September 2009 and that Mr. Meinelt then worked at Ruggle's and Del Frisco's restaurants – albeit at a lower pay rate than he had received at P.F. Chang's. To measure lost economic damages through December 2010, Dr. Lehrer assumed, on the one hand, that Mr. Meinelt would have remained employed at P.F. Chang's through that month (allowing for unpaid time off for the surgery and recovery) and that he would have experienced a three percent merit raise in 2010. Dr. Lehrer then compared that number to Meinelt's actual earnings post-termination and, after adjusting for the value of fringe benefits, the necessary work-related expenses, and federal income taxes, concluded that Meinelt's economic losses through December 2010 were $34,000 after taxes.

---

[2] This sector falls between the white collar and blue collar sectors of the job market. (Ex. 2, Lehrer Dep. at 22-23).

**Front Pay – January 1, 2011 Through Anticipated Recovery of Earnings Capacity**

To assess the future economic impact of Meinelt's stigmatizing termination, Dr. Lehrer relied upon the "Below Market Discount Rate,"[3] which uses the "real rate of interest" – not the nominal rate of interest – which he calculated to be three percent (the "today" market rate of four percent, less one percent for inflation). For the baseline, Dr. Lehrer continued to assume a three percent merit raise per year had Meinelt not been terminated under the stigma of theft by P.F. Chang's[4] and had instead been allowed to continue prospering in his chosen field.[5]

On the other hand, Dr. Lehrer calculated the amount of money Meinelt would be expected to earn into the future based, first, on his actual post-termination earnings from Ruggle's and Del Frisco's. Dr. Lehrer then projected that earnings stream into the future, and included an anticipated special wage increase of seven percent per annum[6] (as compared to the

---

[3] The Fifth Circuit has specifically approved this methodology. *See Culver v. Slater Boat*, 724 F.2d at 117.

[4] Theft is one of the most serious of allegations of misconduct that can be leveled at an employee; thus, the stigma of being labeled a thief puts a significant blot on Meinelt's employment record. This taint has greater significance, Dr. Lehrer explains, in the tan collar sector and it takes a longer time for those individuals to regain an income stream level that the individual would have achieved absent the stigmatizing event. (Ex. 2, Lehrer Dep. at 22-25, 93-94.)

[5] The defendant incorrectly states that Dr. Lehrer's projections were based on continual employment at P.F. Chang's. That is not at all what Dr. Lehrer said. He explained that his projections were based on the plaintiff's likelihood of continuing to prosper in his chosen career, like he had been doing at P.F. Chang's. (Ex. 1 - Lehrer Report at 7; Ex. 2, Lehrer Dep. at 92-94).

[6] In this projection, Dr. Lehrer conservatively estimates a seven percent growth in earnings from other jobs in the future as compared to only a three percent growth in earnings had Meinelt not been unceremoniously dumped from his then-successful and prospering career path. This projection puts Meinelt on an aggressive path of seeking to catch up. As a result, nearly half of the future economic losses occur in the first five years of the damage model. (Ex. 1 at attached Ex. A). The annual losses trail off over time, resulting in a difference in pay of only $121 in the final year. (Ex. 1 at attached Ex. A).

three percent– which allows Meinelt, eventually, to "catch-up" to what he could have been earning absent the stigmatizing and unlawful termination. With those facts and numbers, Dr. Lehrer calculated that Meinelt would not be able to "catch-up" to the baseline projections until the year 2027. After accounting for fringe benefits, work-related expenses, and federal income taxes, and after considering the economic earnings data on service personnel, support staff and workers/employees in the United States, along with the Employment Cost Index (ECI), Dr. Lehrer projected that Meinelt's economic damages after December 2010 and until the time of "catch-up," would have a present discounted value of $191,500.[7] At that time, assuming a retirement age of 65, Meinelt would still have fourteen years of projected employment.

### The Defendant's Legal Arguments – and Lack of Authority

While the defendant cites several cases about the factors the Court should consider when awarding front pay, not one supports the goal it seeks – to preclude Dr. Lehrer from even offering his expert opinion in court. Not a single case cited by P.F. Chang's arises from an argument to altogether preclude an employee's ability to present economic expert testimony in support of an argument for future wages losses.

In *Burns v. Texas City Refining, Inc.*, 890 F.2d 747 (5th Cir. 1988), for example, the court rejected the request for a post-judgment front pay award because the defendant's assets were all sold to a third party several years before trial, all employees except a small transition team were terminated, and there was no evidence that the plaintiff would have been hired by the third party. There is no evidence of that nature in this case.

---

[7] The total before discounting is $232,400.

In the cases defendant cites on front pay, the court engages in an analysis of the front pay awards made by the lower courts after the close of testimony – to ascertain whether the lower court abused its discretion in setting the amount. The Court of Appeals upheld the award in *Downey v. Strain*, 510 F.3d 544 (5th Cir. 2007). On the flip side, the Court of Appeals for the D.C. Circuit found that – because she failed to present expert testimony concerning her future earnings potential, the plaintiff was improperly awarded 26 years of front pay in *Peyton v. Dimario,* 287 F.3d 1121 (D.C. Cir. 2002).

And, in *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869 (5th Cir. 1991), the Fifth Circuit found that it was reversible error to deny the plaintiff an award of front pay. While the lower court said it could not make such an award based on the evidence, the Fifth Circuit disagreed – finding that the evidence of the plaintiff's post-termination earnings, as compared to her wages with the defendant, constituted sufficient evidence from which an award for front pay could be calculated.

The defendant did not provide the Court with one judicial opinion in which an expert witness in economics, with credentials such as those of Dr. Lehrer, and with solid analyses such as those presented by Dr. Lehrer, was precluded from presenting testimony to the jury. Not one. *See, e.g., Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) (physician lacked sufficient medical or historic grounds to find causation between individual's exposure to herbicide and his physical and emotional problems); *Edmonds v. Ill. Cent. Gulf R.R. Co.*, 910 F.2d 1284 (5th Cir. 1990) (an employee's clinical psychologist expert was not qualified to give opinion on causative link between employee's stress and worsening of his preexisting heart condition); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) (*en banc*) (upholding decision to deny

admissibility of expert testimony about connection between chemical vapor and personal injury based on lack of studies).

### The Factual Inaccuracies in Defendant's Argument

To try to achieve its desired result, the defendant also misstates the record on more than one occasion. For example, when Dr. Lehrer was asked about the likelihood of Mr. Meinelt changing jobs in the future, he said that was "possible." (Ex. 2, Lehrer Dep. at 93). Defendant changes that answer, arguing that Dr. Lehrer agreed that such a turnover was "likely."  (Dkt. 29 at 2). More to the point, however, is Dr. Lehrer's explanation that his damages model is solid regardless of the frequency of job changes. Job changes *per se* simply do not establish the economic damages. (Ex. 2, Lehrer Dep. at 93).  Dr. Lehrer further explains that, by being in a "tan collar" industry, Mr. Meinelt cannot as easily replace his job with one of comparable pay, particularly considering that he is tainted with the allegation of serious misconduct. (Ex. 2, Lehrer Dep. at 22-25).  In yet another misstatement of the record, Defendant portrays Dr. Lehrer as admitting that restaurants "do in fact hire managers laterally." (Dkt 29 at 3). While defense counsel's speculation about the food services industry is hardly a bone of contention in this case, Dr. Lehrer explained that there was "no 'yes' or 'no' answer to that question." (Ex. 2, Lehrer Dep. at 24).

Dr. Lehrer then carefully explained the basis of his opinion. Economists, he says, "don't work on possibilities; they work on probabilities." *Id.* Thus while there are an infinite number of possibilities, his job was confined to analyzing outcomes that are most probable given the facts and existing field of knowledge. *Id.* at 25.

**Defendant's Misguided Challenges**

Other misguided challenges to the proffer of Dr. Lehrer's expert testimony on economic damages are addressed below.

1. <u>Future Management Prospects</u>. P.F. Chang's criticizes Dr. Lehrer for not assuming that Meinelt would, in the future, be raised to a management position in some future employment position. There is no factual evidence on which to base this possibility, and the unchecked consideration of mere possibilities in the future is not endorsed in any of the widely-recognized economic reports and studies upon which Dr. Lehrer, as a learned economist, relied.

Just as he did not predict a specific management job for Meinelt in his current professional path, Dr. Lehrer's projected losses also assumes no management job for Meinelt had he remained on the road to success that he was enjoying prior to his termination from P.F. Chang's. This is true even though the possibility of a management position at P.F. Chang's had some evidentiary support in the record. As Meinelt testified, and as his supervisor Mike Brown confirms, Meinelt was being groomed for a significant promotional opportunity – to serve as a manager of the entire restaurant – at the time of his termination. (Ex. 3, Meinelt Dec. at ¶ 3; Ex. 4, Brown Dep. at 93-94; Ex. 5, Brown Dec. at ¶3). Had Dr. Lehrer relied on that testimony in his economic estimates of future economic losses, Meinelt's damages would have been significantly higher. Dr. Lehrer reasonably excluded that possibility from his analysis.

2. <u>The Six Factors Considered in Assessing Front Pay Awards</u>. The defendant wrongly accuses Dr. Lehrer of ignoring six factors commonly examined by the Fifth Circuit in its review of front pay awards made by the lower courts. But, as with its other arguments, the defendant

11

offers neither evidence nor legal analysis to back up this contention. Nor can it cite to any part of Dr. Lehrer's deposition in which defense counsel even asked these questions.

As to the first factor – Meinelt's length of employment, it cannot be disputed that Dr. Lehrer considered Meinelt's prior employment history. He also considered Meinelt's longevity with P.F. Chang's and acknowledges the past occurrences of Meinelt's changes in employment. But, Dr. Lehrer makes it clear that his future projections of income – both the baseline and the projected loss – do not depend on particular places of employment. And there is no doubt but that Dr. Lehrer considered the nature of the work – the restaurant business, the service industry, and the tan collar sector of the economy. The fourth factor – Meinelt's age and physical condition – is front and center in Dr. Lehrer's analysis, and there is no evidence on which any reasonable assumption could be made that Dr. Lehrer's was wrong about his age, or that Dr. Lehrer should have assumed a premature end to his reasonably anticipated work life.

As to the fifth factor – the possible consolidation of jobs – the defendant points to no evidence in the record from which any expert in the field of economic analysis could make a reasonable assumption. There is no evidence that any merger or consolidation is even a twinkle in the eye of P.F. Chang's Chief Executive Officer, or its owners in general. Indeed, P.F. Chang's is expanding its operations. Finally, as to the possibility of any non-discriminatory factor that could have led to Meinelt leaving P.F. Chang's absent the discriminatory firing, the evidentiary record is equally silent. And, as Dr. Lehrer patiently explained, his calculations are

not tied to any particular job that Meinelt may have post-December 2010 – either without or with the taint.[8]

    3.  <u>Front Pay Awards Do Not Lend Themselves to a Per Se Rule.</u> As one lower court the defendant cites in its motion explains, "federal courts... have stated that the issue of front pay does not lend itself to a *per se* rule." *Stafford v. Electronic Data Sys. Corp.*, 749 F. Supp. 781, 787 (E.D. Mich. 1990). And, a case-by-case analysis is exactly what the Fifth Circuit recommends, and has followed. The defendant's claim that Meinelt's expert's analysis ignores Fifth Circuit precedent is without support. *See, e.g.*, *Mota v. University of Texas Health Science System,* 261 F.3d 512, 526-27 (5th Cir. 2001) (affirming 15 years of front pay, based in part on "a pattern of vindictive behavior."); *Olitsky v. Spencer Gifts*, 964 F.2d 1471, 1474 (5th Cir.1992) (affirming district court award of $400,000 in front pay); *Patterson v. PHP Healthcare,* 90 F.3d 927, 936 n.8 (5th Cir. 1996) (observing that normally front pay goes until age 70 or the normal retirement age). *See also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1190 (2d Cir. 1992) (affirming a 17-year front pay jury award); *Padilla v. Metro-North Commuter Railroad,* 92 F.3d 117 (2nd Cir. 1996) (25 year award).

    4. <u>Meinelt's Work Life Expectancy</u>. The defendant wrongly claims that Dr. Lehrer's projected future economic losses assume a lifetime front-pay award. Meinelt was born in 1974, and, according to data in the Statistical Abstract of the United States (2010 ed. page 78, table 105), "the statistical lifespan for a Caucasian male born in 1974 is 77.4 years of age." Meinelt

---

[8] The defendant wrongly accuses Dr. Lehrer of expressing the definitive belief that Meinelt would change jobs frequently, as it wrongly claims that Dr. Lehrer found it "highly unlikely" Meinelt would stay with P.F. Chang's for a lengthy period of time. (Dkt. 29 at 2, 7). Possible specific changes in Meinelt's employers in the future was simply not part of the analysis post-December 2010.

testified that he wanted to retire at the age of 67. In 2027, when Dr. Lehrer's analysis predicts that his income level will catch-up to the pre-event level, Meinelt will be 53 years old, with 14 years of remaining worklife.

## Conclusion

The defendant has not met its burden to demonstrate that Dr. Lehrer's testimony is, as claimed, unreliable or based upon insufficient facts. Accordingly, the plaintiff respectfully asks this Court to deny the defendant's motion.

Respectfully submitted,

s/ Katherine L. Butler *
Butler & Harris
Federal I.D. No. 4734
State Bar No. 03526300
Paul R. Harris
Federal I.D. No. 897365
State Bar No. 24059905
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (713) 526-5691

**\*Attorney in charge for Plaintiff**

## Certificate of Service

I certify that I am filing this document through the court's electronic filing system on this day, April 11, 2011, and that opposing counsel of record is a registered user of the system.

/s/ Katherine L. Butler